# PEOPLE'S NATIONAL BANK v. MARYE.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 24.　Argued October 14, 15, 1903.—Decided November 30, 1903.

This court will follow the ruling of the highest court of a State when it has held that a state statute does not violate the constitution of that State.

While a State may only tax shares of a national bank in accordance with the Federal statute, a state law, which does not give the shareholders the benefit of all deductions to which they are entitled, is not necessarily void altogether but may be sustained as to the amount properly taxable.

The mere lack of a provision in a tax law for notice does not take away the jurisdiction of the taxing officer to make an assessment under any circumstances. It the tax could be imposed for a certain amount it is not void but at most voidable for the illegal amount, if any.

Where the amount of the tax which shareholders should pay if all the deductions they claimed were allowed, is ascertainable, neither they, nor the bank itself on their behalf, can maintain an action in equity to restrain the collection of the entire tax. They should, under the rule that he who seeks the interposition of a court in equity, must himself do equity, first offer to pay that part of the tax which under their contention is not illegal.

THIS is an appeal, by the bank as complainant below, from a decree of the United States Circuit Court for the Eastern District of Virginia, dismissing its bill with costs. 107 Fed. Rep. 570.

The complainant and three other national banks in Lynchburg, Virginia, each commenced a suit in the above-named court, against the auditor of public accounts of the State, to restrain the collection of certain taxes assessed upon the share owners of stock in the several banks, on the ground that such taxes were illegally laid. This particular complainant has brought the case here by appeal as a test case, the same questions arising in all the others.

It is insisted upon the part of complainant that the laws under which these taxes were levied are unconstitutional and

void, and the prayer of the bill is that the stockholders may be relieved and discharged from all liability on account of such unpaid taxes.

The original bill, which was filed July 22, 1896, seeks ·to enjoin the collection of taxes upon the stock of the shareholders in the complainant bank for the years 1891 to 1895, both inclusive, and a preliminary injunction order to that effect was granted.    After the filing of the original bill and on February 10, 1900, a supplemental bill was filed by leave of the court, and it was therein sought to enjoin the collection of all taxes for the years 1891 to 1897, both inclusive.

Both bills were demurred to and the Circuit Court sustained the demurrers and dismissed the bills.

It was averred in the bills that the acts of the legislature of Virginia providing for the taxation of bank shares, both in national and state banks, were in violation of the Federal Constitution, as well as that of Virginia, and were also in violation of the act of Congress, Rev. Stat. sec. 5219, providing for the taxation of shares of national bank stock under state authority.

The taxes referred to in the original bill were levied under the act of Virginia passed March 6, 1890.    Acts of Virginia Assembly, 1890, p. 205, c. 244, sec. 17.    That act prohibited any assessment upon the capital stock of banks, either state or national, and provided for assessing the stockholders on their shares in those banks upon the market value thereof, at the same rate as is assessed upon other moneyed capital in the hands of individuals residing in the State.    It will be observed that this rate of assessment is the condition upon which Congress, in the section of the Revised Statutes above mentioned, permits the taxation of national banks by or under state authority.

Under this Virginia act it was further made the duty of the banks to pay the amount of the tax, and if a bank failed to pay the same, its cashier and his sureties were made liable for the tax and twenty per centum in addition to be recovered by the auditor of public accounts upon notice.

An assessment upon the real estate of the bank was also to be made against the bank itself for the same taxes as other real estate was assessed for. The ground of the alleged illegality of the taxes is stated to be the want of any provision for notice of time and place of valuation of the shares in arriving at market value, and the failure to provide for deducting the value of real estate from such market value, and also the failure to permit deductions for the debts of the shareholders.

The taxes spoken of in the original bill (1891–1895) were not paid, and no proceedings seem to have ever been taken to enforce their collection under that act against the cashier or his sureties. It might be surmised that they were not taken because of a doubt as to the constitutionality of that part of the act which provided for the liability of the cashier and his sureties, if the bank failed to pay the tax assessed upon its shareholders. However that may be, the authorities did not, in fact, take any proceedings to enforce the payment of the taxes until the passage of the act of March 3, 1896. Acts of Assembly of Virginia, 1896, c. 642, p. 700. That act provided a procedure for the collection of the taxes theretofore assessed against the stockholders of banks and then remaining unpaid. By its provisions the taxes were made a first lien upon the stock, no matter in whose hands found, and it was made the duty of the auditor of public accounts immediately to furnish the cashiers of banks with a list of their stockholders theretofore assessed with taxes upon their bank stock and who had not paid the same, and each bank so desiring and electing was authorized to pay to the auditor the taxes assessed upon the stock held by its stockholders, provided payment was made before the first day of July, 1896. If the bank did not choose to make such payment, it was made the duty of the auditor to give a copy of the lists to the attorney general, and it was made his duty to proceed by motion to collect the taxes from the individual stockholders. The motion was to be cognizable in the Circuit Court of Richmond city, after ten days' notice to the stockholder, and might be served upon non-resident

defendants in the mode provided by section 3208 of the Virginia code.

By the supplemental bill the taxes for the years 1896–1897 were brought under review and a perpetual injunction was asked to restrain the collection of all taxes from 1891 to and including 1897. The assessments for the years 1896–1897 were assessed under another act of the legislature of Virginia, which was also passed March 3, 1896. Acts General Assembly of Virginia, 1895–1896, p. 726. The seventeenth section of that act provided for assessments upon the shares of state and national banks at the market value of the shares of stock held in the banks at the same rate that is assessed upon other moneyed capital in the hands of individuals residing in the State. The act provided, also, that the banks should make a report on the first day of February in each year, in which should be given the names of the shareholders, the number of shares owned or held or controlled by each, the market value of the stock, and the shareholders' residences, and it was then made the duty of the commissioner of revenue, on or after the first day of February in each year, to assess each stockholder upon the shares of stock held or owned by him at the market value, on the first day of February in each year, as therein stated. The section then provided for the retention of all the dividends by the bank, and for the application of the same to the payment of the tax assessed upon such stockholders, and that each bank might, if it so elected, pay the tax so assessed against the stockholders directly to the auditor of public accounts before the first day of June in each year.

Provision was then made that if the bank failed to make such payment, the auditor of public accounts was to transmit a copy of the assessment list furnished him by the commissioner of revenue, and it was made the duty of the treasurer to collect the tax therein levied, and to that end to levy upon the stock of the taxpayer.

Other provisions were made in regard to the transferring of the stock to the purchaser at the sale upon the levy made

by the treasurer, and penalties were denounced upon the bank for a refusal to comply with its provisions.

Soon after the passage of the acts of March 3, 1896, the public authorities were about to take proceedings for the purpose of enforcing the collection and payment of the taxes for the years mentioned, and thereupon this suit was brought and a preliminary injunction obtained restraining the collection of all taxes for those years upon the bank shares until the further order of the court.

The shareholders in these four banks in the city of Lynchburg have paid no taxes on their shares of stock in those banks since 1890.

*Mr. John H. Lewis* and *Mr. John D. Horsley* for appellant.

*Mr. William A. Anderson,* Attorney General of the State of Virginia.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The complainant objects to the legality of the taxes upon the ground, among others, that the acts of the Virginia legislature, under which they were levied, violated the provisions of the constitution of that State, and were, therefore, entirely invalid. These objections are, as we think, untenable. They are technical, and relate to alleged defects in the titles of the acts, in not being sufficiently specific in stating the tax and the object to which it was to be applied, and also that the taxes were not equal and uniform. We think the objections are without merit, and we concur with what is stated upon this subject in the opinion of the Circuit Court herein. The state court has held the statutes do not violate any provision of the state constitution, and we follow that court upon such a question. *Merchants' Bank* v. *Pennsylvania,* 167 U. S. 461; *Schaefer* v. *Werling,* 188 U. S. 516.

The chief objections which are made to the taxes are three:

1. No notice is provided for in any of the acts as to when or where the valuation of the shares of the bank for purposes of taxation will be made, and hence the shareholder has no opportunity to be heard upon that question, and the whole tax is void for that reason.

2. That the acts provide for a valuation of the bank's shares at the market value without providing for a proportionate reduction on account of the value of the real estate owned by the bank, which is also by the law of Virginia to be assessed for its value against the bank itself; that by reason of this omission, the shareholder is taxed once on the full market value of the stock, a part of which consists of the value of the real estate, and he is taxed again, indirectly, for his proportion of the amount of the tax paid by the bank on this same real estate, and the result is that he is taxed upon his bank shares, as he insists, at a greater rate than upon other moneyed capital, etc.

3. That no provision is made under these acts for permitting shareholders to deduct their indebtedness from the assessments upon their shares of stock, while it is alleged the holders of large amounts of other moneyed capital are by the laws of Virginia permitted to deduct their indebtedness from that capital and are called upon to pay taxes only upon the balance.

On these grounds the complainant insists that the taxes were illegal and void, and upon such grounds it has based its prayer that the stockholders should be wholly freed from any liability to pay such taxes or any part thereof.

The defendant under his demurrer argues that, properly construed, although notice is not in terms provided for, yet the acts do provide an opportunity for a hearing before the tax can be enforced, and also that there is no illegal discrimination in the scheme enacted by the legislature of Virginia against the holders of national bank shares and in favor of other moneyed capital in the hands of individual citizens of the State. He denies that, so far as relates to the alleged failure

to deduct the value of the real estate of the bank from the market price of the stock or the indebtedness of the shareholder from the amount upon which such shareholder is assessed, (when the provisions of the general law of Virginia upon the subject of taxation or other property are compared,) there was any violation of law or any illegality in the several taxes assessed on such shares. He also insists that the complainant could not legally represent the shareholders herein or maintain this action. He further urges that, as neither the original nor the supplemental bill showed any payment or tender of an amount which would be justly due, even under the objections of complainant, the suit could not be maintained.

The Circuit Court held that, as to the taxes for 1891–1895, under the two acts already mentioned, (acts of 1890 and 1896,) the suit could not be maintained for the reason that the bank was under no obligation to pay the taxes for its shareholders, and there was no penalty or other inconvenience to the bank attending its refusal to pay, but that the case was different under the second act of 1896, as to the assessments made after 1895, and that as to those the bank was placed in such a position under that act as permitted it to maintain the suit. The court then examined the act with reference to the averments of the bill and supplemental bill, and with regard to the general laws of Virginia relating to the taxation of other property, and concluded that the act of 1896 was valid as construed by it, and that the assessments of 1896 and 1897, under it, were legal, and therefore dismissed the bill.

In the view we take of this case, it is unnecessary to decide any other question than that which arises from the omission in either bill to aver payment, or at least a tender of the amount of taxes equitably and justly due as a condition of obtaining the interference of a court of equity by enjoining the collection of the balance.

The prayer of the bill is "that the said defendant and all others may be perpetually enjoined from collecting taxes assessed on the stockholders by the State of Virginia for the

years 1891, 1892, 1893, 1894, 1895, 1896 and 1897; that the said acts of the legislature of Virginia assessing the stockholders of your complainant with taxes may be declared unconstitutional and void, and that its stockholders, as well as your complainant, may be discharged and relieved from all liability growing out of the assessments."

From this it appears there has, in fact, never been any payment or tender of any part of the taxes assessed against the shareholders during the years above mentioned, and the omission of an averment of payment or tender of payment was therefore not a mere oversight.

In our view of the facts set forth in this case in the original and supplemental bills, the complainant was not entitled to any injunction unless it paid the amount equitably due, and if it made such payment then the injunction would issue, restraining the collection of the balance. This is of course upon the assumption that the objections taken to the acts as above set forth are well founded. Whether they are or not, it is not necessary for this purpose to decide.

Taxation of shares of stocks in national banks is the universal rule, and probably there is no State in the Union in which such taxation is not provided for as a part of the property subject to taxation for the general support of the state government. The State of Virginia has by this legislation sought to provide for and enforce taxation of this kind of property. It is clearly shown that it intended to provide for a legal assessment; one that complied with the conditions of the Federal statute, for the language of the various acts above mentioned in providing for such taxation is substantially the same as that used in the Federal statute, as they provide that the assessments shall not be on the capital of any bank, but shall be upon the shares at the same rate as is assessed upon other moneyed capital in the hands of individuals residing in the State. This is the purpose of the laws and if in attempting to effect that purpose some slip is made or some details are provided for therein which may render assessments under them irregular or even illegal,

that fact does not detract from the equitable duty of the share-
holders in national banks to fulfill the plain demands of the
laws, and pay a tax on their shares in like proportion as is as-
sessed upon other moneyed capital, before they can establish
any claim for interference in their behalf by a court of equity.
To the extent (if any) that the assessment exceeds that amount,
it may be assumed proper to ask a court of equity to enjoin its
collection, but surely it offers no equitable foundation for an
injunction restraining the collection of the whole tax, nine-
tenths of which may be justly due on every equitable principle.

The original and supplemental bills, taken together, show
at least the amount that would be justly and equitably due
on the theory of the complainant, for they show that if the
two deductions (being all that are insisted upon by the com-
plainant) had been made by the taxing officer, the complainant
would not have had any ground of complaint as to the amount
of the taxes. There are data in the original and supplemental
bills from which it can be at once and definitely determined
what the amount of the deductions claimed by complainant
would be. The market value of the stock is stated for each
year, as assessed by the taxing officer, and also the value of
the real estate is stated for each year, and this last amount,
complainant insists, should be deducted in arriving at the
market value of the stock. The bills also show the different
shareholders who had debts at the time the various assess-
ments were made, and the amounts of the deductions they
would, therefore, be entitled to for each of the years in con-
troversy. These two classes of deductions being made, the
complainant offers no equitable objection to taxes which might
be assessed upon the balance. With these data thus appearing,
from which the equitable amount of the taxes due by the share-
holders is readily determined, we think this conceded amount
should be paid before a court of equity ought to grant its aid
by way of injunction. The universal rule of a court of equity
is that he who seeks its equitable interposition must himself
do equity. Is there any higher equity than that a citizen

should pay the amount of a tax which he concedes to be just and equitable before asking the aid of a court of equity to grant an injunction to enjoin the collection of any greater sum?

The complainant, however, insists that the rule does not exist where the assessments are void and not merely irregular, and it asserts that these assessments are void because the acts under which they were laid do not provide for notice to the shareholder before determining the value of the share upon which the tax is to be laid, and also because the assessment violated the act of Congress in being at a greater rate than is assessed upon other moneyed capital.

We are of opinion, however, that these assessments were not void within the meaning of the rule which absolves the taxpayer from the necessity of paying or tendering the amount equitably due from him. If there were no right to assess the particular thing at all, either because it is exempt from taxation, or because there is no law providing for the same, an assessment under such circumstances would be void, and, of course, no payment or tender of any amount would be necessary before seeking an injunction, because there could be no amount equitably due where there never had been a right to assess at all. Where, however, there is a statute which provides for an assessment and gives jurisdiction to the taxing officer, under some circumstances, to make one, but the particular assessment is invalid for want of a notice to the taxpayer, or some other kindred objection, the equitable duty still rests upon him to pay what would be his fair proportion of the tax as compared with that laid upon other property before he can ask the aid of the chancellor to enjoin the collection of the balance. This is the equitable rule, and it is good morals as well. To say that the act under which the tax is levied is unconstitutional, and therefore is the same as no law, and hence there is no duty to pay anything, because no tax can be levied without some law therefor, is to state the proposition too broadly. We concede that if the law were unconstitutional because, for instance, there was no constitu-

tional power to tax the particular property, there is no necessity to pay anything. But where some part of the law may be unconstitutional because of a failure to comply with some matter of detail, but the amount which the owner of the property ought to pay is perfectly clear under the provisions of law, then if the taxpayer desire to be exempted from paying more than his share, he must pay or offer to pay his proportion before equity will aid him in his effort to escape paying a disproportionate share.

The statute herein provides for a tax and creates the equitable obligation to pay some amount by reason of the shares, and even though there may be some obstacle which prevents its entire legality, yet the person assessed should recognize his equitable obligation to pay the tax to the extent stated before he can base any claim for the assistance of equity to get rid of the balance of the tax. The mere lack of a provision in the statute for notice did not take away the jurisdiction of the taxing officer to make an assessment under any circumstances.

What is the purpose of notice? Clearly that the person assessed may have an opportunity to show some reason, if any, why he should not be assessed at all, or else not so much as he has been in fact. But suppose that, although there was no notice provided for in the act, the taxpayer had nevertheless heard of the assessment, and in fact had appeared before the assessing officer and made his case, showing he should not be assessed more than a certain stated amount, and the officer had allowed his claim to its full extent. Should he be thereafter permitted to resist by means of an injunction the collection of the tax so imposed upon the ground that the statute provided for no notice to him, and none was officially given? Certainly not. So when he comes into a court of equity to ask its aid, should it appear on his own statement or otherwise, that if all the claims he makes were allowed he would still equitably owe the government a certain sum by reason of the statute providing for the assessment, and his ownership of the property assessed, will he be heard to insist that the court

grant him an injunction preventing the collection of any tax because he had no notice of the assessment? He owes something to the government, as a tax upon his shares, and ought any court of equity to aid him in escaping all obligation because, while insisting that the whole assessment is illegal, it yet clearly appears that a portion thereof, even if uncollectible, is nevertheless equitably, and justly, due? Is the equitable obligation arising by reason of these statutes and under these circumstances, to pay *some* tax, completely obliterated because the particular tax cannot legally be collected, and may be called void? We think clearly not. This same reason applies not only to a lack of notice but also to the case of a claim that the tax is illegal because it did not allow the deductions which by the Federal statute should have been allowed. The tax under such circumstances is not void, but at most voidable for the illegal amount. *Supervisors* v. *Stanley,* 105 U. S. 305, 315.

We refer to a few of the many authorities upon the subject.

In *State Railroad Tax Cases,* 92 U. S. 575, 616, it was said by Mr. Justice Miller, in delivering the opinion of the court, as follows:

"Before complainants seek the aid of the court to be relieved of the excessive tax, they should pay what is due. Before they ask equitable relief, they should do that justice which is necessary to enable the court to hear them. . . . It is not sufficient to say in the bill that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The State is not to be thus tied up as to that of which there is no contest, by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be tendered, and tendered without the condition annexed of a receipt in full for all the taxes assessed."

This language is used in relation to taxes which were claimed

to be too high with reference to other property in the State, but the principle of the rule exists even where the tax is averred to be too great, because certain deductions provided by law were not made, or because there was no notice given of the assessment, and hence the taxpayer never had an opportunity to be heard.  If, after hearing, there would appear something to be equitably due from the taxpayer, he should pay it before seeking relief from the court.

In *Cummings* v. *National Bank*, 101 U. S. 153, where the question was whether the rule adopted by the local boards of assessment was in conflict with the state constitution, the court held that it was, and that an assessment made under those circumstances was illegal, but that nevertheless the taxpayer was bound to pay the amount equitably due, and the opinion closes with the statement that "the complainant having paid to defendant, or into the Circuit Court for his use, the tax which was its true share of the public burden, the decree of the Circuit Court enjoining the collection of the remainder is affirmed."

In *National Bank* v. *Kimball*, 103 U. S. 732, the general rule was held to be that the owner of taxable property seeking to enjoin the collection of a tax thereon, which he alleges to be in excess of what is lawful, must first pay or tender so much thereof as is justly due.  Mr. Justice Miller, speaking for the court, said:

"The bill attempts to evade this rule by alleging that the tax is wholly void, and, therefore, none of it ought to be paid, and that by reason of the absence of all uniformity of values, it is impossible for any person to compute or ascertain what the stockholders of complainant bank ought to pay on the shares of the bank."

The *State Railroad Cases, supra,* were then referred to by the court and quotations therefrom made, and the principles therein announced were held to be sufficient to decide the case at bar, thus holding that the mere fact that a tax was void for some particular reason was not ground for the inter-

position of a court of equity by injunction, where it could be seen there was an equitable obligation due from the taxpayer to pay a certain conceded amount, or an amount which could easily be ascertained, and which had not been paid.

These cases in this court are sufficient to show the propriety of the rule, and that it has been followed by us whenever the opportunity arose.

The same principle has been, however, decided by many of the state courts. In *Smith v. Humphrey, Auditor General, &c.,* 20 Michigan, 398, 409, Mr. Justice Cooley, delivering the opinion of the court, said:

"He who comes into equity for relief must be willing to do equity; and there can be no ground upon which, in enjoining an excessive claim, the complainant can be discharged from that which is justly due. (Citing Story and Spence.) This is the rule even as between individuals; and there is at least equal reason for applying it in behalf of the State when it is seeking to collect its revenues. We have had occasion to apply it heretofore in suits to enjoin taxes. *Conway v. Waverly,* 15 Michigan, 257; *Palmer v. Napoleon,* 16 Michigan, 176. See also *Hersey v. Supervisors of Milwaukee,* 16 Wisconsin, 185; *Bond v. Kenosha,* 17 Wisconsin, 288."

This Michigan case was one on appeal from an absolute decree perpetually enjoining a sale for unpaid taxes because of a demand of interest by the proper authorities at a rate not allowed by law. The court held that it could not be sustained, and that the payment of the amount due, with interest at the lawful rate, must be made, and then the sale would be perpetually enjoined.

In *Merrill v. Humphrey, Auditor General, &c.,* 24 Michigan, 170, it was held that a property owner seeking to enjoin the collection of a tax on the ground that the amount is excessive should show by his bill, as near as may be practicable, what amount is just and what is excessive, and he should pay to the proper officer the amount which he concedes to be properly

chargeable against himself. Mr. Justice Cooley, delivering the opinion of the court in that case, said (p. 175):

"We have already said that the complainant should be required to do equity as a condition of relief. What is just to the public cannot be done unless he pays within due time such proportion of the tax assessed upon him as he concedes to be fair; and we think this payment should be required by the injunction master to be made to the proper officer as a condition to the allowance of injunction. To this extent, the case is within the principle of *Conway* v. *Waverly*, 15 Michigan, 257, and *Palmer* v. *Napoleon*, 16 Michigan, 176, heretofore decided by us, and of several Wisconsin cases," etc.

In *Steuart* v. *Meyer*, 54 Maryland, 454, where it appeared that the sale of certain property in the city of Baltimore for the non-payment of taxes was illegal in not complying with the statute, it was held (p. 468) that the complainant, as a condition of obtaining a decree setting aside the sale, must pay to the party entitled to receive it the full amount of the taxes in arrear at the time of the sale by the collector, together with the interest accrued thereon to the time of the payment, and also all taxes that had subsequently accrued and were due on the property with interest.

In *Alexander* v. *Merrick*, 121 Illinois, 606, it was held that 'in accordance with the principle that a party seeking equity must do equity, a court of equity in setting aside a void tax sale as a cloud upon title, would still require the complainant to refund the taxes paid by the holders of the certificates of purchase on their purchase and also succeeding taxes to protect their purchase. In this case it was conceded that the tax sales were illegal and void, and that any deeds issued by the county clerk, based upon such sales, would also be unlawful and void, but nevertheless would, on their face, appear to be valid official acts of the clerk, and would cause a cloud upon the title to the lands. At page 614 the court said:

"The complainant claims that the certificates of sale were clouds upon his title and obstacles in the way of its beneficial

enjoyment. He asks a court of equity to dissipate these clouds and remove these obstacles. He, who seeks equity, must do equity. The court below by its decree should have required the complainant to refund the taxes paid by Reed and Forsythe as a condition to granting the relief prayed for. That such a requirement is proper in cases of this kind has been repeatedly held by this court."

In *Morrison* v. *Hershire, Treasurer, &c.,* 32 Iowa, 271, 277, an assessment for local improvements, the court refused to interfere even if the assessments were, as to one of the fronts on the street, unauthorized unless the party complainant paid or tendered the portion legally due. The court said:

"An elementary principle of equity is applicable to the objections here presented. It is not denied that under the rule of assessment as fixed by the council, if applied as contended for by plaintiffs, certain sums are due from the lot owners which are charges upon their lots. These sums the respective plaintiffs are bound by law and in equity to pay. Before plaintiffs can claim relief as to the sums which they insist are overassessed upon their property, they must pay or offer to pay the sums lawfully and justly due, according to their own theory of the assessment; for he who seeks equity must do equity; but this plaintiffs have not done."

And on page 278:

"We understand that it is a settled rule in equity that where a party is in conscience bound to pay a certain sum of money which, together with an amount that he is not legally bound to pay, is brought as a legal claim against him, equity will not restrain the collection of the whole, unless he pay or offer to pay, by tender, the sum which he justly and legally owes."

The rule requiring payment of the sum equitably due cannot be too rigorously enforced in cases regarding payment of taxes. This rule does not assume the validity of the assessment for that sum, but it simply says that under the circumstances the taxpayer shall have no right to come into court and enjoin the payment of any tax when the amount which,

equitably, he ought to pay is easily and certainly determinable from the conceded facts in the case.

In the case at bar because certain deductions were not made, although there was a large sum assessable even if the deductions were allowed, the injunction granted has prevented the collection of any part of the assessments, and for twelve years the stockholders in these Lynchburg banks have paid not one dollar of taxes by reason of their ownership of such shares. This is inequitable and unjust, and a court of equity should not be made the instrument by which such injustice is continued.

Although we reach the conclusion above stated on the ground we have discussed, it is not to be inferred that we regard the other grounds untenable. We intimate no opinion in regard to them. To the end that complainant may, if it so elect, pay as provided in this opinion, and then commence further proceedings, the dismissal of the bill will be without prejudice, and as thus modified the decree of the Circuit Court is

*Affirmed.*