[Nos. 5399 and 5400.]

## CITY AND COUNTY OF DENVER v. MOSES HALLETT, EXECUTOR.

## CITY AND COUNTY OF DENVER v. MOSES HALLETT.

**Injunction—To Restrain Collection of Taxes**—Where part of the tax is legal, and this amount can be ascertained with reasonable certainty, the payment or tender thereof is a condition precedent to the award of an injunction restraining collection of the residue. An averment that plaintiff is ready and willing to pay whatever may be found due will not suffice, even though the assessment as to items legally taxable is confused with others. —(136, 137)

That the particular act under which the assessment is made is unconstitutional will not avail, where the assessment may stand upon previous enactments.—(137)

A complaint affirmatively showing that the plaintiff has not paid or tendered a part of the tax shown to be legally chargeable against him, cannot be amended, but must be discontinued. —(136-138)

*Appeal from Denver District Court*—Hon. PETER L. PALMER, Judge.

Mr. H. A. LINDSLEY, city attorney, and Mr. CHARLES R. BROCK, for appellant.

Mr. W. C. KINGSLEY and Mr. GEO. W. ALLEN, for appellee.

These are appeals from judgments rendered in actions instituted by the respective appellees to restrain the appellant in each case from enforcing the collection of taxes levied for the year 1901. To the complaint in each case a general demurrer was interposed and overruled. The defendant elected to stand by its demurrers, and judgments were rendered granting the relief prayed. The only question presented is, whether or not the respective complaints state a cause of action.

For the purpose of considering this question a synopsis of each complaint is all that is necessary.

In the first cause plaintiff alleged, in substance, that on or about the 18th day of June, 1901, as executor of the will of Clayton, deceased, he returned to the assessor a verified schedule of all taxable property belonging to the estate of deceased, in which he listed notes secured on real estate aggregating $12,500.00; notes not secured, $850.00; fifty shares of the capital stock of the State Bank of Aspen of the par value of $5,000.00; fifty shares of the capital stock of The International Trust Company of the par value of $5,000.00; bonds of the Denver Union Water Company of the par value of $162,000.00, secured by mortgage on the company's plant in Denver; bonds of the Eureka Springs Railway Company, an Arkansas corporation, of the par value of $12,-000.00; cash on deposit in banking institutions in Colorado, $9,968.00.

That the assessor made out and substituted a tax schedule for the one so returned in which he listed under the description of "money, notes and credits," $30,000.00; that in so doing he assumed to act under the authority of an act of the general assembly of Colorado, approved on or about the 5th of April, 1901; that the schedule returned by plaintiff contained a true list and statement of the written evidences of indebtedness secured on real estate, and those not so secured, as also bonds of the Denver Union Water Company belonging to the estate; that the schedule made by the assessor was for the purpose of assessing the plaintiff upon money, notes and credits of the value of $30,000.00; that this item was made and entered upon the assessment roll without any distinction between notes, bonds or other written evidences of indebtedness, or money, notes or credits; that it does not appear whether a part or the whole

of the item of $30,000.00 was for money or notes or other written evidences of indebtedness, or for credits, or whether the whole or any part thereof is for either of such items, or whether the whole or any part of the sum assessed was a statement of value or of amount of the items against which it was entered; that the assessor in rejecting the schedule returned by plaintiff and substituting one in its place, acted arbitrarily and upon conjecture only; that he received a written notice from the assessor of the substituted tax schedule, from which it appeared in particulars mentioned that the assessor, in making out the substituted schedule, violated the revenue law of 1901; that thereafter he filed with the assessor his objections to the substituted schedule; that the assessor failed to notify him of any day or time when he would hear the objections so made; that he was never afforded a hearing nor advised that any action had been taken by the assessor upon the objections filed until the 30th day of December, 1901, at which time he was notified by the assessor that he had overruled his objections; that he has never received any notice from the board of county commissioners of any action taken by them as a board of equalization with reference to his assessment as made by the assessor; that the defendant claims the right to collect of and from him a tax upon the sum returned by the assessor, and will do so unless restrained.

He further alleges that in the year 1901, when the assessment of $30,000.00 was made, he did not possess or own any personal property in his representative capacity subject to taxation, other than set out in his verified tax schedule. He then alleges facts upon which he predicates the claim that the revenue act of 1901 was not constitutionally passed.

He further alleges that he has paid all taxes on real estate against him in his representative capacity

for the year 1901, and had it not been for the alleged illegal action of the assessor, he would have paid all of the taxes legally assessed against him for the year 1901 upon the personal property as returned by him, and that he has ever since been, and now is, ready and willing to pay the taxes justly and legally chargeable to him upon the personal property returned in his verified schedule.

He further charges that the assessment made by the assessor is illegal and void, in that he did not possess or own the property so assessed, and because such amount and valuation was not made upon an estimate or value of the property, but upon conjecture only, without any information upon which to base it; and that it is also illegal and void because such assessment was made in gross and not upon any separate statement of the items which it purported to cover, and because such assessment was made upon supposed loans secured on real estate, which was also assessed for taxation that year; and, finally, because such assessment deprived him of property without due process of law, and denies him the equal protection of the law, contrary to the fifth and fourteenth amendments to the constitution of the United States.

In the second cause the averments of the complaint are substantially the same as those in the first, with the exception of amounts and items. He avers that in the schedule which he returned he listed one road vehicle of the value of $40.00; one horse of the same value, and also promissory notes secured by real estate to the aggregate amount of $39,650.00, unsecured notes amounting to $2,100.00, also certain bonds of the Denver Union Water Company of the par value of $80,000.00, secured by mortgage on the plant of the company, and cash on deposit in banking institutions amounting to the sum of $2,705.60; that for the tax schedule so returned the assessor substi-

tuted one, wherein he assessed against the plaintiff two road vehicles of the value of $80.00, two horses of the value of $150.00, and under the description of "aggregate cash value of promissory notes, bonds, deposits and other written evidence of indebtedness" $200,000.00, and under the description of "average cash value deposits in banking institutions in Colorado" the sum of $2,700.00.

Judgment was prayed in each case that the assessment of taxes referred to in the respective complaints be adjudged illegal and void, and for a perpetual injunction restraining the collection thereof.

Mr. Justice Gabbert delivered the opinion of the court:

Where it is sought to restrain the collection of a tax which it is alleged is illegal, and it appears that a part is legal, the amount of which can be ascertained with reasonable certainty, equitable relief will not be granted unless it is made to appear that the legal tax was paid or tendered to the proper official.— *Breeze v. Haley,* 11 Colo. 351; *Insurance Co. v. Donner,* 24 Colo. 220; *City of Denver v. Kennedy,* 33 Colo. 80; *City of Denver v. Londoner, idem,* 104; *Hallett v. U. S. Security & Bond Co.,* 40 Colo. 281; *People's Nat'l Bank v. Marye,* 191 U. S. 272; *State R. R. Tax Cases,* 92 U. S. 575; Book 23, L. C. P. Co., 663; *Merrill v. Humphrey,* 24 Mich. 170; *Morrison v. Hershire,* 32 Iowa 271.

This proposition rules the cases at bar. It is apparent from the respective complaints that included in the substituted schedules returned by the assessor, items were included as returned by the plaintiffs. Some of these were certainly subject to taxation and the amount of taxes thereon would be legal and could readily be ascertained. It appears from the averments of the complaints that plaintiffs

have not paid or tendered to the proper officer the amount of such taxes. Before plaintiffs are entitled to equitable relief they must do that justice which is necessary to enable the court to hear them by paying or tendering such taxes as are conceded to be due, or can be seen to be due, or it is evident are due, whether conceded or not. It is not sufficient to say in their complaints that they are ready and willing to pay whatever may be found due. The defendant cannot be prevented from collecting the taxes regarding which there is no contest by lumping them with those which are contested. This rule should be rigidly enforced.—*Railroad Tax Cases, supra; People's Nat'l Bank v. Marye, supra.*

The fact that the revenue act of 1901 is claimed to be unconstitutional does not change the rule applicable to these cases. If invalid, then the revenue acts which it purported to supersede are still in force and under those the plaintiffs would be required to first pay, or tender, to the proper officer the taxes regarding which there can be no contest before they would be entitled to a judgment enjoining the collection of the alleged illegal taxes. Plaintiffs can only complain of the taxes in excess of those which could have been lawfully levied upon the items returned by them, but the acts by which this excess was brought about do not relieve them from paying or tendering those which it is clear they are legally bound to pay, for the reason, as stated, that the taxes as finally levied embrace items in their respective returns, some of which, at least, were subject to taxation. The alleged illegal acts of the assessor did not render void the taxes on these items.

The statements in the respective complaints that plaintiffs had not paid or tendered the taxes which it is apparent they should pay or tender, render them fatally defective and incapable of amendment so as to state causes of action.

It is, therefore, unnecessary to consider the other questions raised by appellants.

It must not be understood, however, that, in passing them or from anything said, plaintiffs would be entitled to equitable relief if they had paid or tendered the taxes regarding which there can be no dispute. See *Ins. Co. v. Bonner,* 7 Col. App. 97; *Hallett v. Board of County Commrs.,* 40 Colo. 308; *State Railroad Tax Cases, supra.*

The judgments of the district court are reversed and the causes remanded, with directions to sustain the demurrer to each complaint and dismiss the actions at the cost of the respective plaintiffs.

*Reversed and remanded with directions.*

CHIEF JUSTICE STEELE and Mr. JUSTICE HILL concur.