HARRIS TRUST & SAVINGS BANK et al.
v. EARL et al.

Circuit Court of Appeals, Eighth Circuit.
May 16, 1928.

No. 7707.

1. Taxation ⊂390(2)—Railroad's valuation for taxation purposes involves consideration of original cost, cost of reproduction, less depreciation, bonded indebtedness, market value of securities, and earning capacity.

Valuation of railroad property for taxation purposes involves consideration of original cost, cost of reproduction, less depreciation, bonded indebtedness, and current market value of stock and bonds, as well as earning capacity; market value of securities and earning capacity being of greatest significance.

2. Taxation ⊂390(2)—"Earning capacity," for taxation purposes, is amount railroad should earn under efficient management.

"Earning capacity" of railroad, for purpose of determining valuation for taxation purposes, is amount which property should have earned, if efficiently managed, and not actual earnings under incompetent operation.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Earning Capacity.]

3. Taxation ⊂611(6)—Plaintiffs, in foreclosure suit against railroad, had burden to prove excessive valuation in assessment of railroad property for taxes.

In suit to foreclose deed of trust against railroad, in which county asserted prior lien for taxes, holders of deed of trust, who claimed that the tax valuation was grossly excessive, had burden to prove the valuation was excessive, and that it was so excessive as to indicate constructive fraud.

4. Taxation ⊂505—County's valuation of railroad property for tax purposes at $448,274 held not illegal, as affecting priority of tax lien, where average operating surplus from property for previous years was over 10 per cent. thereof, notwithstanding railroad's decreased earning capacity.

Where original cost of railroad property in county was approximately $897,500, and percentage of outstanding bonded indebtedness proportionate to share of property in county was approximately $700,000, and proportionate

26 F.(2d)—39½

share of the authorized capital was $1,450,000, county's valuation of property for taxation purposes at $448,274 was not so excessive as to indicate constructive fraud, requiring denial of priority of tax lien as illegal, in suit against railroad to foreclose trust deed, notwithstanding sudden decrease in railroad's earning capacity, partly due to poor management, where proportionate share of average operating surplus for seven preceding years was more than 10 per cent. of valuation fixed by county.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit by the Harris Trust & Savings Bank and others against Will Earl and others to foreclose a deed of trust, in which the Board of County Commissioners of Cherokee County, Kan., and the Treasurer of that county, intervened. From a judgment granting priority to the interveners, plaintiffs appeal. Affirmed.

John E. Tracy, of Chicago, Ill. (James H. Harkless, of Kansas City, Mo., Chapman, Cutler & Parker, of Chicago, Ill., and Harkless & Histed, of Kansas City, Mo., on the brief), for appellants.

Don H. Elleman, of Columbus, Kan. (Williams & Elleman, of Columbus, Kan., on the brief), for appellees.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

OTIS, District Judge. The board of county commissioners of Cherokee county, Kan., and the treasurer of that county, appellees here, intervened below in a suit brought by appellants to foreclose a deed of trust against the Joplin & Pittsburg Railroad Company. The interveners assert a prior lien for taxes. The trial court found in their favor, gave judgment against the railway company for the taxes claimed to be due, with interest and penalties, and decreed that that judgment should be a first lien upon the company's assets. The appellants contest that judgment.

The taxes involved are for the years 1923, 1924, and 1925. For the year 1923 the tax claimed is $13,874.09, on a valuation assessed by the tax commission of Kansas at $448,274; for the year 1924 the tax claimed is $14,751.22, on a valuation of $448,274; for the year 1925 the tax claimed is $8,346.72, on a valuation of approximately $250,000. No part of these taxes has been either paid or tendered. The sole consideration now urged by appellants is that the valuations were excessive so grossly as for that reason alone to show constructive fraud and consequent illegality. No actual fraud is charged.

It is earnestly urged upon us by the appellants that valuation of railroad property for taxation, at least under the circumstances in this case, should be determined, if not altogether, at least most largely, from a consideration of the earning capacity of the property, and it is urged that the earning capacity of the property involved here for the year 1923 was such as to justify at most a valuation of about one-fourth of that fixed by the state.

[1, 2] But it is not the law that the valuation of railroad or other property for taxation purposes is to be determined from any single factor. As bearing upon the proper result, many facts have evidential value. Certainly, among others, are to be considered original cost, cost of reproduction less depreciation, bonded indebtedness, current market value of stock and bonds, and earning capacity. Of these the two last named are of the greatest significance. Chicago & Northwestern Railway Co. v. Eveland (C. C. A.) 13 F.(2d) 442. But earning capacity and actual earnings are by no means identical. What the property efficiently managed should have earned, and not what it has earned under incompetent operation, is the earning capacity that throws light on value.

[3, 4] The burden was on appellants to show excessive valuation, and to show that it was so excessive as to indicate constructive fraud. Now, in this case the evidence introduced by the appellants (there was no other evidence) touching the value of this property in Cherokee county in 1923, for which year, as we have noted, the value fixed by the taxing authorities was $448,274, was as follows: That its original cost was approximately $897,500; that one-fourth of the outstanding bonded indebtedness (one-fourth of the whole property being in Cherokee county) was approximately $700,000; that one-fourth of the authorized capital was $1,450,000; that one-fourth of its operating surplus for 1923, as shown on its books, was more than $20,000, and for 1922 was more than $40,000; that one-fourth of the average operating surplus for the seven years preceding 1923, as shown on the company's books, was more than 10 per cent. on a valuation of $448,274; that a sudden decrease in earning capacity began in 1923, and was the result of increased competition by automobiles, following the construction of hard-surfaced roads, and of loss of public confidence caused by inefficient operation. There was other evidence, to which reference shortly will be made, but there was no evidence tending to show for 1923 the cost of reproduction less depreciation, or the then current market value of the stocks and bonds.

That the facts just stated of themselves do not justify the contention of excessive valuation in 1923 must be apparent. Some of these facts themselves would have warranted an even higher valuation than that fixed. Moreover, if all of them are excluded, except the one factor of earning capacity, even that does not indicate for that year a valuation clearly excessive, in view of the showing as to the previous earning capacity of the property, and of the further showing that the decreased earning capacity was in part, at least, due to poor management.

The other evidence above referred to, in so far as it has any bearing upon the result here, may be boiled down to this: That whereas the books of the company show for the year 1923 upon the property located in Cherokee county earnings of $20,000, and larger earnings for the year preceding, that showing is inaccurate, and that, if proper allowance had been made for maintenance and depreciation, the actual earnings would have been for the whole property $35,834.77, only one-fourth of which, or $8,958.69, is attributable to the property located in Cherokee county. The contention is that the valuation of $448,274 was obviously excessive in view of such moderate earnings, and reliance is placed upon the decision of this court in the case cited supra, Chicago & Northwestern Railway Co. v. Eveland. So the question is, if it be conceded, for present purposes, that the earnings for 1923 were only $8,958.69, does that fact, having in view also the other facts shown, and the absence of any evidence as to factors proper to be considered, justify a conclusion of excessive valuation, under the authority of the case cited. We think not.

The case cited by no means holds that earning capacity is completely to overshadow other factors. Indeed, in that very case other factors were given such consideration as that a $29,000,000 valuation was inferentially held fair on railroad property producing substantially no net earnings whatsoever. In the present case, moreover, as distinguished from that case, low earning capacity loses something of its persuasiveness in comparison with other factors, when it is shown in part to have resulted from inefficiency and incompetence.

Our conclusion is that it has not been proved that the valuation for 1923 was excessive to such an extent as to warrant a finding of constructive fraud. The same is true as to the valuations fixed for the years 1924 and 1925. The facts as to those years were not different, with the exception that as to

both years there was evidence tending to show that there were no earnings, and that in the last-mentioned year the whole property at a foreclosure sale brought but $350,000. Even if it be conceded that a close and scientific inquiry demonstrates that during a period of two years earnings disappeared entirely (the books of the company, however, as to 1924 showing an operating surplus), that fact by itself does not make the valuations fixed unquestionably and beyond all bounds excessive; it being also conceded that proper management of the property might have produced substantial earnings. And, of course, a price obtained at a forced sale is but a poor index of real value, even if it could be urged that the taxing authorities could anticipate what price would be realized at such a sale.

In any event, it is seriously to be doubted if appellants (the company having tendered nothing while conceding something to be due) are in a position to urge that the valuations were excessive, and to obtain a reduction of those valuations in this case. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; People's National Bank, v. Marye, 191 U. S. 272, 24 S. Ct. 68, 48 L. Ed. 180; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757. But that point it is unnecessary to decide in this case, in view of our conclusion as to the failure to show that the valuations were excessive to the extent claimed.

The judgment is affirmed.