**VENTURA CONSOLIDATED OIL FIELDS**
v. ROGAN, Collector of Internal
Revenue.*
No. 7671.

Circuit Court of Appeals, Ninth Circuit.
Oct. 26, 1936.

*Writ of certiorari denied 57 S. Ct. —, 81 L. Ed. —.

WILBUR, Circuit Judge, dissenting.

———◆———

Herman Phleger, of San Francisco, Cal., and Charles C. Stanley, R. K. Barrows, and J. A. Tucker, all of Los Angeles, Cal., for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John MacC. Hudson, Sp. Assts. to the Atty. Gen., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This action was brought in the District Court by Ventura Consolidated Oil Fields, a corporation, against the collector of internal revenue, seeking to enjoin the defendant from attempting to collect by distraint or otherwise alleged income tax deficiencies for the years 1920 to 1923, inclusive, claimed by taxpayer to have been assessed during a period in which the taxing statute prohibited assessment. It should be noted that taxpayer seeks no injunction restraining the government from proceeding to assess taxpayer for taxes properly due and thereafter collect them, but merely that "the Collector 'be enjoined * * * from making any levy, seizure or distraint under authority of or under the pretended authority of such alleged assessments.'"

The bill for injunction is based upon the right conferred by section 274 (a) of the Revenue Act of 1926 (44 Stat. 55) as follows: "If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this chapter [title], the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed * * * the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency. Except as otherwise provided * * * no assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final. Notwithstanding the provisions of section 3224 of the Revised Statutes the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

The appellant contends that:

(1) The claimed deficiencies were prohibited to be assessed by the administrative officials of the treasury by the taxing statutes because

(a) No notice of the claimed deficiency was ever mailed by the Treasury or received by the taxpayer; and

(b) If a letter claimed by the Treasury to comply with the statute is such a notice, the alleged assessment was made within the prohibited 60 days from its mailing.

(2) The congressional purpose in so specifically providing injunctive relief against distraint on the forbidden assessment is to compel the Commissioner to give to the taxpayer his right to an administrative assessment. The Commissioner, by failing to mail such letter and to make such assessment, after the expiry of the 60-day period, does not thereby deprive taxpayer of his right to an administrative assessment and transfer to the court of equity the assessing function the Commissioner has failed to perform.

(3) The elapse of the statutory time in which the Commissioner may make a proper assessment of the alleged deficiencies does not create any power in equity to perform the neglected duty of the Commissioner.

(4) Even if the taxpayer's injunctive right was not for the specific congressional purpose of compelling assessment by the prescribed administrative officials, and the court could grant the injunction conditioned on a payment of taxes admittedly due, there is no admission of the taxpayer that it owes any of the claimed deficiencies and nothing in the pleadings or evidence from which the existence of such a liability may be determined.

The taxpayer made its return for the tax years 1920 to 1923, inclusive, and paid its tax thereon. On September 14, 1928, the Commissioner of Internal Revenue wrote taxpayer advising it of alleged deficiencies in taxes for the years in question in addition to others not material here. This was not the letter required by the statute in which the Commissioner "determines" the deficiency. It was a preliminary statement, expressly permitting protest by the taxpayer and conference before the statutory determination.

Taxpayer made protest, and a conference over the disputed taxes was had between its representatives and those of the collector, at which conference, apparently, a tentative settlement of the tax liability was agreed upon.

On September 4, 1929, the Commissioner sent to the taxpayer a registered letter, the material portions of which read as follows:

"Reference is made to a conference granted your representative * * * at which conference an agreement was reached relative to the *adjustments protested by you.*

"In accordance with the agreement referred to above, your tax liability has been recomputed and Bureau letter dated September 14, 1928, has been revised to disclose a deficiency * * * as shown in the attached statement and accompanying schedules.

"It is believed that this revised computation of your tax liability will be satisfactory and that it will be your desire to definitely close your case as promptly as possible. Therefore, you are requested to execute the enclosed Forms 866 and forward both original and duplicate to the Commissioner * * * within twenty days from the date of this letter."

The material portions of the accompanying schedules purported to show income tax deficiencies for the years 1920 to 1923 inclusive, the alleged taxes here in dispute.

The inclosed form 866 which was sent taxpayer with the registered letter was entitled "Agreement as to Final Determination of Tax Liability," and was a regular method for final closing of liability by mutual agreement, authorized by section 606, Revenue Act of 1928, 26 U.S.C.A. § 1660. It recited an amount of total deficiency and that the taxpayers (plaintiff here and certain of its then affiliates) consented to the assessment and collection of the named deficiency (with a certain exception not material here). We set out the final paragraph verbatim: "Now, This Agreement Witnesseth, that said taxpayers *and* said Commissioner of Internal Revenue hereby *mutually* agree that the principal amount of such liability so determined shall be final and conclusive if and when this agreement is approved by the Secretary of the Treasury or the Undersecretary."

The closing agreement was duly signed and sealed by plaintiff and its affiliates and filed with the Commissioner of Internal Revenue on October 11, 1929. It was never signed by the Commissioner, nor was it approved by the Secretary or Undersecretary of the Treasury, as required by the statute. The case was argued and submitted to us on the express admission in Appellee's brief that the agreement to compromise the tax "was not signed or accepted by the Commissioner as a final or conclusive agreement of the appellant's tax liability. * * * The Commissioner, refusing to accept the document as a final or closing agreement, regarded the same as a waiver of the restrictions enforced by section 274 (a) upon assessment and collection of the deficiencies."

It is also stipulated that "A final closing agreement in accordance with the provisions of section 606 of the Revenue Act of 1928 has not at any time been approved by the Secretary of the Treasury or the Undersecretary of the Treasury," and that "No other notice or writing waiving the restrictions provided in [section 274 (a)] of the Revenue Act of 1926 was signed by [appellant] or by anyone in its behalf. * * *" These restrictions, it will be re-

membered, being designed to allow summary appeal to the Board of Tax Appeals before assessment, forbid (inter alia) an assessment within 60 days after notice of deficiency has been sent by registered letter to the taxpayer, or if appeal with the Board has been filed within that time, until the decision of the Board has become final, with a specific provision for injunctive relief. The Commissioner so regarding the unaccepted closing agreement as a waiver of the right to the 60-day delay, on November 2, 1929, less than 60 days after the letter enclosing it had been mailed to the taxpayer, formally purported to assess against taxpayer the proposed deficiency amounts appearing therein together with interest thereon.

In July, 1932, taxpayer filed its amended bill of complaint in this action, praying an injunction under section 274 (a), Revenue Act of 1926, restraining the collector from collecting or attempting to collect the taxes so assessed on November 2, 1929, within the 60-day period. Upon the facts as above set out, taxpayer alleged that the Commissioner's letter of September 4, 1929, was not a proper notice of deficiency as required by section 274 (a), and that even if such letter were proper notice, the assessment of November 2 was void for having been made less than 60 days after the deficiency letter. The collector takes issue as to the sufficiency of the September 4 letter; asserts further that the November assessment was made in due time because by signing the final closing agreement and forwarding it to the Commissioner in October, taxpayer waived the restrictions on assessment contained in section 274 (a). After hearing, the District Court entered a decree dismissing the taxpayer's bill. This appeal followed.

(1) The assessment was prohibited by section 274 (a) because (a) no letter determining the deficiency was mailed taxpayer, and (b) if the letter sent had made such a determination the assessment was made within 60 days of its mailing.

■ We first consider the issues as to the validity of the so-called deficiency letter of September 4, 1929, and the status of the alleged waiver. Both of these questions must be considered with reference to the underlying purpose of section 274 (a) and subsequent provisions which is to provide through the Board of Tax Appeals a method for the review of tax liability before assessment is levied. The taxpayer con-

testing the validity of a proposed assessment may have his choice between this form of review and paying the tax under protest, later suing for a refund. If he chooses the first alternative, the Commissioner may not assess within the 60 days in which taxpayer may file his appeal to the Board. If assessment is attempted during this period, taxpayer has his injunctive remedy.

We sustain the contention of appellant that the letter of September 4, 1929, does not comply with the statute, and that assuming that it did comply with the statute, the assessment within the 60-day period after the notice of the letter is prohibited by the statute.

■ Construing the statute in the light of its purpose, the question before us as to the sufficiency of the letter of September 4, 1929, is whether or not the taxpayer was granted a reasonable opportunity thereby to avail itself of its remedy before the Board of Tax Appeals. We think it was not granted such opportunity. It is true, as argued by appellee, that a deficiency letter need be in no particular form, but suffices to authorize an assessment after 60 days if it fairly advises the taxpayer that the Commissioner has determined a deficiency. Commissioner v. New York Trust Co. (C.C.A.) 54 F.(2d) 463, 465; McDonnell v. United States (Ct.Cl.) 59 F.(2d) 290, 295; Burnet v. San Joaquin Fruit & Investment Co. (C.C.A.) 52 F.(2d) 123, 128. The deficiency letter need not notify the taxpayer of his right to appeal to the Board. He is presumed to know that. Thomaston Cotton Mills v. Rose (C. C.A.) 62 F.(2d) 982, 983.

■ The Commissioner's letter of September 4, the material portions of which we have quoted, included the necessary elements of a deficiency letter as required by the above cases. The difficulty with the letter was not in what it lacked, but in additional matter it included. It was coupled with a blank form closing agreement for a final settlement of tax liability, and was expressly sent only in reference to such closing agreement and in reference to the conference had earlier between representatives of the taxpayer and the government. It was, in substance, only an invitation to the taxpayer to offer to compromise the disputed taxes in an agreed determination to be made the basis of a settlement. There is no ambiguity of possible interpretations of the document, but, if there were,

it would have to be construed against the draftsman. This principle applies as much to documents of the Internal Revenue department as to those of any one. Commissioner v. Leasing & Building Co. (C.C.A.) 46 F.(2d) 2, 4.

We hold, therefore, that the letter of September 4, 1929, was an invitation to the taxpayer to offer to enter into the compromise described above. Until accepted, the taxes still remain disputed by the taxpayer. It was not calculated to advise the taxpayer that the stated amount would be assessed against it within 60 days regardless of the inclosed proposal. It was not, therefore, a sufficient letter under the terms of section 274 (a).

The absence of a proper deficiency letter and the making of the assessment within the 60-day period prescribed by statute defeats the validity of the assessment unless the signing by taxpayer of the suggested "Agreement as to Final Determination of Tax Liability" constituted a waiver on its part of the restrictions on assessment contained in section 274 (a).

We hold that the taxpayer did not waive the restrictions of section 274 (a). According to section 274 (d), Revenue Act of 1926 (26 U.S.C.A. § 272 (d) and note), a taxpayer may waive the restrictions by a signed notice in writing filed with the Commissioner. The collector urges that the taxpayer complied with this section by signing and filing the closing agreement which agreement contained the clause " * * * said taxpayers hereby agree to this determination * * * *and consent to the assessment* and collection of any deficiency in tax included in the amount of the principal tax liability so determined. * * * *" The collector's contention overlooks the manifest difference between a waiver contemplated by section 274 (d) and an "Agreement as to Final Determination of Tax Liability" provided for by section 606 of the Revenue Act of 1928. The latter, to be valid, must be a bilateral contract, agreed to by both parties. Special forms are provided both for waivers and for closing agreements. There was introduced in evidence below a special standard form of waiver to be used with and in addition to the closing agreement, if desired. Such standard form reads as follows: "Irrespective of the execution or approval of the foregoing agreement [final closing agreement] the undersigned corporation * * * hereby waives the restrictions provided in section 274 (a) of the Revenue Act of 1926 * * * on the assessment and collection of any deficiency in tax included in the principal sum of the tax liability as set forth in the said agreement. * * * *"

The existence of such a form clearly shows that the Commissioner of Internal Revenue contemplated a waiver as something entirely different from a closing agreement. In the instant case it is persuasive evidence of an intent of the Commissioner not to seek a waiver of any right, if the closing agreement was not approved or signed, that this form was not used.

There is no reason to suppose that taxpayer, making such an offer to compromise and settle the claimed tax indebtedness, intended to forego its right to a determination by the Board of Tax Appeals in the event the agreement was not accepted by the Commissioner. The Commissioner may not take that portion of the proposed compromise which suits him and reject the rest. La Compania Bilbaina De Navegacion De Bilbao v. Spanish-American Co., 146 U.S. 483, 496, 13 S.Ct. 143, 36 L.Ed. 1054. If a taxpayer's waiver of restrictions is given upon a condition, the Commissioner may not take advantage of the waiver without complying with the condition. William C. Atwater & Co. v. Bowers (C.C.A.) 74 F.(2d) 253, 256.

The case of Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647, cited in the opinion below, has no application to the case at bar. There the taxpayer had requested the preparation of a stated account and having received it, accepted it by paying the balance due. Here the parties are dealing at arms' length, and the proposal of the Bureau was not accepted.

It follows, therefore, that even if the deficiency letter of September 4 be held adequate under section 274 (a), the subsequent assessment was prohibited by the statute, having been made within the 60-day period.

We therefore hold that the taxpayer has established his right to an injunction against any action to be taken by the collector claimed to be based upon this assessment of November 2, 1929.

(2) The injunction of section 274 (a) is provided for the specific purpose of assuring taxpayer that a claimed deficiency

shall be determined by the administrative process and adjudication by the Board of Tax Appeals provided by the statute. It must be granted without condition. The Commissioner, by failing to perform his administrative duty, cannot deprive taxpayer of his statutory right and convert the special injunctive proceeding into a judicial determination of the tax.

As we understand the necessary implications of the argument on behalf of the Commissioner, it is that we should consider the injunction provided by section 274 (a) as if it prevented *any* assessment upon which its collection could be demanded—that is to say, an injunction against enforcing any deficiency tax upon taxpayer's income for the four years in question. So considering the writ, he argues that it would be inequitable to grant it unless the taxpayer first submits to an assessment by the court and makes the payment of the amount, if any, so found to be due, a condition for its issuance.

■ We do not so construe the statute. It is plainly not intended to prevent the collection of a tax which the Commissioner may assess under the legislation provided for administrative tax determination. On the contrary, its plain and sole purpose is to *guarantee to the taxpayer that he shall not be deprived of the administrative process,* with appeal to the Board of Tax Appeals.

It would be a clear perversion of the statutory provisions as follows: "No assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final. Notwithstanding the provisions of section 3224 of the Revised Statutes the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court," to hold that the Commissioner, by merely *disobeying* the prohibition of the statute, could transfer his assessing function from the statutory administrative tribunal to the judicial.

None of the cases cited by the Commissioner is in point. All are cases seeking to prevent the collection of *any* tax for the tax period in question. Instead of compelling the taxpayer to perform an equitable duty, the requirement that he shall pay a tax found due by the court, as a condition to his injunction, would do him the inequity of depriving him of the administrative assessing process before the Commissioner granted him by the statute. As was said in Norwood v. Baker, 172 U.S. 269, 291, 19 S.Ct. 187, 196, 43 L.Ed. 443: "*It should be observed that the decree did not relieve the abutting property from liability for such amount as could be properly assessed against it.* Its legal effect, as we now adjudge, was only to prevent the *enforcement of the particular assessment* in question. It left the village, in its discretion, *to take such steps as were within its power to take,* either under existing statutes, or under any authority that might thereafter be conferred upon it, to make a new assessment upon the plaintiff's abutting property for so much of the expense of opening the street as was found, upon due and proper inquiry, to be equal to the special benefits accruing to the property. By the decree rendered the *court avoided the performance of functions appertaining to an assessing tribunal or body,* and left the subject under the control of the local authorities designated by the state." (Italics supplied). See, also, Central Kentucky Co. v. Railroad Commission, 290 U.S. 264, 271, 272, 54 S.Ct. 154, 157, 78 L.Ed. 307.

■ What is there said as to the right of the taxing body applies with equal force to the preservation of the right of the taxpayer. Such is the clear intent of the statute. If it were not, it is a reasonable interpretation more favorable to all taxpayers and must prevail. United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; Burnet v. Guggenheim, 288 U.S. 280, 286, 53 S.Ct. 369, 371, 77 L.Ed. 748.

■ There is no merit in the Commissioner's contention that the taxpayer is not entitled to his injunction without condition.

(3) The failure of the Commissioner to assess the tax in the statutory manner and the elapse of the statutory time within which he may do so do not create any assessing power in the court sitting in equity.

The Commissioner claims that he has failed to make any assessment of the claimed deficiency after the statutory 60-day period and that this is "a practical matter to be seriously considered" because

"*if* the assessments of November 2, 1929, are held void and collection of the taxes so assessed for that reason is enjoined, no assessment of any deficiencies for such years can be made and collection cannot be enforced."

There are also pressed the large sums the Commissioner will have lost to the government if in this proceeding the amount he failed to assess cannot be recovered. We are unable to discover any difference in the applications of the rules of law or equity in tax cases, whether the government's claim be for $100 or $10,000,000.

Nor are we able to discover anything in the record to warrant a finding that the statutory period in which the Commissioner can assess is not extended by the customary waivers for which the statute makes provision. But presuming the Commissioner's claim is sustained by the record and that he has failed in his duty either to obtain the waivers or make the assessment in the period provided by Congress, such failure on his part cannot be made the basis of a claim in equity that it has created a power in the court to make good his dereliction.

To reverse the situation, assume a bill by the government against a taxpayer to sequester his property, intermingled with others, to satisfy a tax liability. The taxpayer pleads, after the time for appealing from the assessment has passed, that he does not owe the tax assessed, and hence the bill should be dismissed. It seems clear that it is the intent of Congress that such a taxpayer's plea of denial of asserted liability, alike with the instant government's plea of assertion of denied liability, cannot be made after the statutory period has elapsed for the administrative settlement of their claims in proceedings in the Treasury Department. To hold otherwise would remove from the taxing process the certitude and definiteness which its administrative necessities require both for governmental purposes and the protection of the taxpaying public.

 No laches in the taxpayer can be claimed by the government because the latter's delay in the movement to distrain postponed a suit by the taxpayer until after the statutory time for assessment had elapsed. In the absence of the movement on the part of the government to destrain or otherwise enforce the void assessment, the taxpayer is entitled to assume that the Commissioner regarded it, as in fact it was, a prohibited act not binding on the taxpayer. There is no merit in the contention that the Commissioner's failure has enhanced the power of the court in granting an injunction order under section 274 (a).

(4) Assuming that a payment could be required as a condition for the injunction provided in section 274 (a), it must be for a deficiency "conceded to be due." Here neither pleading nor proof establish any deficiency to be due.

We have held that the taxpayer is entitled without condition to the injunction provided by section 274 (a), which is intended to compel the government, if it is to collect the tax, to proceed to assess it under its Treasury regulation by the Commissioner, after the 60 days have elapsed.

Even if the taxpayer sought (which it does not) the avoidance of paying any tax deficiency for the years in question, the record does not here show, either in pleading or proof, that any deficiency is admitted to be due or can be found due.

The rule that the condition is "paying that which is conceded to be due" has recently been stated in Mr. Justice Stone's opinion in Central Kentucky Co. v. Railroad Comm., 290 U.S. 264, 54 S.Ct. 154, 78 L.Ed. 307. That was a case where the injunction was sought not under a specific and purposeful statute such as section 274 (a), but under general principles of equity. At page 271 of 290 U.S., page 157 of 54 S.Ct., 78 L.Ed. 307, it is stated: "The power of a court of equity, in the exercise of a sound discretion, to grant, upon equitable conditions, the extraordinary relief to which a plaintiff would otherwise be entitled, without condition, is undoubted. It may refuse its aid to him who seeks relief from an illegal tax or assessment unless he will do equity by paying that which is conceded to be due. State Railroad Tax Cases, 92 U.S. 575, 23 L. Ed. 663; Cummings v. National Bank, 101 U.S. 153, 25 L.Ed. 903; People's National Bank v. Marye, 191 U.S. 272, 287, 24 S.Ct. 68, 48 L.Ed. 180; see Norwood v. Baker, 172 U.S. 269, 294, 19 S.Ct. 187, 43 L.Ed. 443."

In each of the cases cited it appeared from the record that *some part* of the tax sought to be enjoined was in fact owing. In State Railroad Tax Cases the bill was dismissed because a lesser amount, certainly due, was not tendered the State collectors. In Cummings v. National Bank

the lesser amount was voluntarily deposited in the court. In People's National Bank v. Marye the condition is the payment of what "is easily and certainly determinable from the conceded facts in the case." In German National Bank v. Kimball, 103 U.S. 732, 735, 26 L.Ed. 469, cited by this Commissioner, a lower tax was due, the claim being only that complainant was overassessed. In Norwood v. Baker, considered supra, where, as here, the tax could be later assessed, the injunction was granted without condition.

Not only is there no amount of deficiency "easily and certainly determinable from the conceded facts in the case," but nothing in the entire record upon which could be based a finding that there is any deficiency due at all, much less a "determinable" amount.

So far as concerns the unaccepted offer of compromise of the letter of September 4, 1929, that unaccepted offer, as in all such cases, admits nothing.

The dissent asserts—"Further statement of the facts will make it plain that this was the actual intent of the parties to the stipulation before the Board of Tax Appeals. The parties stipulated in the lower court as follows as to the facts:

" 'On the 2nd day of November, 1929, the Commissioner of Internal Revenue made the following as additional assessments against the plaintiff herein:

| Year | | Amount |
|------|-----------|-------------|
| 1920 | Principal | $193,555.28 |
| | Interest | 42,804.88 |
| | Total | 236,360.16 |
| 1921 | Principal | 267,077.92 |
| | Interest | 116,301.46 |
| | Total | 383,379.38 |
| 1922 | Principal | 19,065.73 |
| | Interest | 7,158.38 |
| | Total | 26,224.11 |
| 1923 | Principal | 16,298.13 |
| | Interest | 5,141.37 |
| | Total | 21,439.50' |

"Hence, both parties evidently considered the assessment of November 2, 1929, to be an assessment when stipulating before the Board of Tax Appeals as to the amount of the deficiency for the years 1920 and 1921. Hence, the stipulation and the order or decree based thereon assumed the obligation of the taxpayer to pay the amounts previously assessed, although the 'assessment' was premature."

We cannot concur in this because immediately after the quoted matter, the transcript shows the Commissioner's stipulation that "The plaintiff contends that said assessments were illegally and erroneously made and its joining in this Stipulation shall not be considered as an admission that the same are valid."

The Commissioner claims the record of this proceeding before the Board of Tax Appeals arising out of a determination of deficiency for the same tax years, but made on March 29, 1930, subsequent to the prohibited assessment, shows an admission of unpaid deficiencies for 1920 and 1921, for which he now seeks distraint. This determination of deficiency was made in a letter of the Commissioner to appellant in the following language:

"March 29, 1930.

"Sirs:

"In accordance with Section 274 of the Revenue Act of 1926, you are advised that the *determination of your tax liability* for the years 1919, 1920, 1921, * * * discloses a deficiency of $374,168.07 for the year(s) 1919, 1920, 1921 * * * as shown in the statement attached. * * *" (Italics supplied.)

Within the statutory time the taxpayer appealed to the Board of Tax Appeals. The appeal did not proceed to hearing, the parties entering into the following stipulation settling the dispute: "It is hereby stipulated and agreed by and between the parties to this proceeding, by and through their respective attorneys of record, that there *are deficiencies* in the Federal income and profits taxes of the petitioner for the taxable years 1919, 1920, 1921 *in the respective amounts of $59,256.84, $214,687.48 and $100,223.75,* and that an order of the Board settling the determination of said taxes may be entered in accordance with this Stipulation." (Italics supplied.)

Upon this stipulation, the Board of Tax Appeals entered the following decision:

"Under written stipulation signed by counsel for the parties in the above-entitled proceeding and filed with the Board on July 13, 1931, it is

"Ordered and decided: That there *are* deficiencies for the years 1919, 1920 and

1921 in the amounts of $59,256.84, $214,-687.48 and $100,223.75, respectively. * *"

The Commissioner claims that the decision, expressly based upon the stipulation, for the exact amounts determined as deficiencies in the second and properly timed determination of the tax by the Commissioner, is an admission that the taxpayer owes the amounts of taxes attempted to be determined in the invalid assessment of November, 1929. The stipulation, he claims, constitutes an estoppel because he relied upon it until after the statute of limitations had run upon the assessing period. The record, however, fails to show that the time to assess had been extended until the stipulation was signed, and hence the claimed reliance was not proved.

While a decision by consent is as completely res judicata as one after trial (New Orleans v. Warner, 175 U.S. 120, 141, 20 S.Ct. 44, 44 L.Ed. 96), the determination here that there are deficiencies due for a certain amount does not foreclose the inquiry whether the stipulation for the determination was an admission of or the decision determined other deficiencies for other amounts due. This question involves a consideration of the proceeding before the Board of Tax Appeals. That proceeding is for the redetermination of the *whole tax* in which there may be determined a *refund* to the taxpayer of all or a part of his original payment, or, he may be found to owe the government an even greater sum than the amount computed by the Commissioner in his assessment letter. The Commissioner need not claim the increase in his pleading on the appeal, but as the proof progresses, he may assert it at the hearing. He may assert it even at a rehearing. *That is to say, the Board has a free hand to proceed to determine the total tax due and the amount not paid regardless of the form in which the issue is presented.*

These are risks facing both the taxpayer and the Commissioner at the hearing before the Board, as shown by the provisions of the statutes: "274. * * * (e) The Board shall have jurisdiction to *redetermine the correct amount* of the deficiency even if the amount so redetermined is *greater* than the amount of the deficiency, notice of which has been mailed to the taxpayer, and to determine whether any penalty, additional amount, or addition to the tax should be assessed—if claim therefor is asserted by the Commissioner *at* or before the *hearing* or a *rehearing*." (Italics supplied). 26 U.S.C.A. § 1048c (now 26 U.S.C.A. § 272 (e) and note).

"284. * * * (e) If the Board finds that there is *no deficiency* and further finds that the taxpayer has made *an overpayment* of tax in respect of the taxable year in respect of which the Commissioner determined the deficiency, the Board shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Board has become final, be credited or refunded to the taxpayer [as provided in subdivision (a)]." (Italics supplied). 26 U.S.C.A. § 1065 (now 26 U.S.C.A. § 322 (d) and note).

Such is the holding of Peerless Woolen Mills v. Rose (C.C.A.) 28 F.(2d) 661, 662, where, pending an appeal to the Board on a deficiency assessment, the collector caused a distraint warrant to be issued and levied on appellant's property for the amount of the original assessment, to which the defense of the statute of limitations was claimed, just as the defense of the invalidity of the assessment within the 60 days is claimed here. The Circuit Court of Appeals described the situation as follows: "The District Judge, being of opinion that the Board of Tax Appeals acquired jurisdiction *only of the assessment for the deficiency,* held that R.S. § 3224 (26 U.S.C.A. § 154), prohibits a suit to enjoin the collection of the original assessment. Consideration of this appeal has been postponed until the Board of Tax Appeals should decide the appeal pending before it. In an opinion rendered October 17, 1928, the Board of Tax Appeals decided that it had *jurisdiction of the original assessment,* as well as of the deficiency assessment. In that opinion it was also held that appellant was liable for the full amount of the deficiency assessment, but that *the original assessment was barred by the statute of limitations.*" (Italics supplied). 28 F.(2d) 661, 662.

In reversing the District Court (24 F.(2d) 576), the Circuit Court of Appeals holds:

"We are of opinion that it results from these statutory provisions that, while the Board has no jurisdiction where there is no deficiency assessment, yet, if there is a deficiency assessment, the jurisdiction of the Board extends to the *whole contro-*

*versy,* to the end that it may determine or redetermine the correct amount of the tax.

"The jurisdiction of the Board having been shown to exist, section 274 (a) of the Revenue Act of 1926 (26 U.S.C.A. § 1048) is applicable. That section prohibits a proceeding by distraint until the decision of the Board has become final, and confers upon the District Courts of the United States jurisdiction to enjoin collection of the tax, notwithstanding the provisions of R.S. § 3224. Under the admitted facts, we are of opinion that it was error to refuse to issue an injunction." Peerless Woolen Mills v. Rose, supra, .28 F.(2d) 661, 663.

The Commissioner bases his argument that the taxpayer's stipulation for the decision of the Board is an admission of the validity of the November, 1929, assessment on the definition of a deficiency, as follows:

"§ 271. Definition of deficiency

"As used in this chapter in respect of a tax imposed by this chapter 'deficiency' means—

"(a) The amount by which the tax imposed by this chapter exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax." 26 U.S.C.A. c. 1, § 271 and .note.

The dissent summarizes the position of the Commissioner in a computation of the tax due, by inserting in the text of the definition of the term "deficiency" certain bracketed figures, as follows: " ' * * * the term deficiency means, (1) The amount by which the tax imposed by this chapter (that is, the *correct* tax, $896,824.-30 for 1920 and $680,719.25 for 1921) exceeds the amount shown as the tax by the taxpayer ($488,581.54 for 1920, $313,417.58 for 1921); but the amount shown on his return ($488,581.54 for 1920, and $313,417.-58 for 1921) shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency (November 2, 1929, $193,555 for 1920, and $267,077.92 for 1921, making total $682,-132.82 for 1920, and $580,495.50 for 1921) and decreased by the amounts previously abated, credited, refunded, or otherwise re-

paid in respect to such tax.' " (Italics supplied.)

The first insertion, described as "the *correct tax,* $896,824.30 for 1920 and $680,-719.25 for 1921," assumes the very point in question in that appeal; namely, that this is the "correct tax" for these years.

The last insertion of the increase "by the amounts *previously assessed* as a deficiency [November 2, 1929, $193,555 for 1920, and $267,077.92 for 1921 * * * ]," is a second erroneous assumption that on November 2, 1929, there were validly assessed "the amounts *previously assessed* as a deficiency."

It is apparent from the definition that the paramount question which the Board of Tax Appeals shall determine is the "amount by which the tax imposed by this chapter exceeds the amount shown as the tax by the taxpayer." The issue as to this amount was squarely tendered by the taxpayer on its appeal. It is stipulated that the schedules attached to the letter of March 29, 1930, purported to show a total *tax* liability of $896,824.30 for 1920 and $680,719.25 for 1921. This claimed total of tax was based upon a finding by the Commissioner of the *total income* of the taxpayer for the years in question, detailed, it is stipulated, in "schedules consisting of 95 type-written sheets 8½x11 inches and 41 sheets 16x26½ inches." The taxpayer's appeal prayed a redetermination of the tax and assigned twelve errors of the Commissioner in failing to make twelve claimed deductions from the total income. These twelve claimed deductions and the statement of evidence supporting them covered 13 pages of the transcript. By stipulation there is omitted from the transcript that portion of the 136 pages of the Commissioner's schedules showing the claimed total *income* of the company upon which the tax is assessed.

Concerning the Commissioner's claim that the record before the Board of Tax Appeals shows a definite obligation of the taxpayer to the government which must be paid if such payment is a condition of the granting of the injunction, it is apparent that it is impossible to tell, without any showing of the total taxable income claimed in the omitted schedules, whether the twelve deductions would or would not have reduced the amount of the tax claimed to be owing the government on the here undisclosed income to an amount more or less than the money paid by the

taxpayer on its return; or to an amount more or less than the sum stipulated for and in the decision of the Board of Tax Appeals.

It cannot be determined what the Board of Tax Appeals would have found as the total amount of the tax due if the case had proceeded to hearing and the proofs of the extended calculations of the 136 pages of the Commissioner's schedules and of the 13 pages of the claimed deductions of the taxpayer had been offered at a hearing. For all the Commissioner may show from the record the proofs of these deductions, if they had been made, might have caused the Board to decide, as it has the power to do, that the taxpayer was entitled to a refund on his original payment. The proofs might have caused the Board's decision that the government was entitled to a larger sum than the total tax claimed by the Commissioner's assessment letter. All the record shows us is that both these possibilities were compromised in the stipulation for the judgment.

No doubt at that hearing the Commissioner would have attempted to prove the prohibited assessment of November, 1929. He was entitled to do this because of the peculiarly broad jurisdiction of the Board in determining the tax and not because in the schedules appear certain figures described as "previously assessed." These were not described as "assessed as a deficiency," the phrase used in the statutory definition.

The Treasury universally uses the terms *"over*assessment" or "deficiency assessment" as distinguished from prior assessments concerning which they "over" assess or in which the amount is deficient. The figures of the schedules are used in a calculation which does not purport to comply with the requirement of the statute definition.

"Tax Liability—Ventura Consolidated Oil Fields:

| Years | Correct Tax Liability | Tax Previously Assessed | Over Assessment | Deficiency |
|---|---|---|---|---|
| 1918 | $ 29,354.11 | $ 39,162.55 | $8,643.85 | |
| | | * * * * * | | |
| 1920 | 896,824.30 | 682,136.82 | | $214,687.48 |
| 1921 | 680,719.25 | 580,495.50 | | 100,223.75" |

The statutory calculation requires the figure of the "amount shown by the taxpayer on his return." It does not appear.

Each amount claimed as "previously assessed" is different from that of the 1929 prohibited deficiency assessments. The schedules show the amount claimed to be previously assessed to be, for 1920, $682,136.82, while the November, 1929, letter claimed $193,553; for 1921, $580,495.50, while that letter claimed $267,077.92. The amounts described in the schedules as "previously assessed" do not tender an issue to the taxpayer that the Commissioner is claiming to the Board that in November, 1929, he "assessed as a deficiency" the different amounts he now asserts were then determined. The taxpayer having joined issue on the main question of the total tax due would have been entitled to resist the admission of the evidence of the prohibited assessment on the ground of its invalidity.

To the suggestion that the taxpayer must have known that the "previously assessed" amounts included the prohibited deficiency assessment, it is a proper answer that issues are not tendered by allegations whose meaning is determined by the knowledge of the opposing party. Under the peculiar provisions of the act the Commissioner would have had his opportunity to offer *at the trial* his claim that the 1929 assessment was valid, but it is not determined on the condition of the pleadings before the Board. Even had the stipulation been expressly for an *additional* deficiency, the decision was no determination of what was the amount of the *first* deficiency to which the second deficiency was to be added.

We agree with the contention of the taxpayer that this stipulation and the judgment entered thereon determine no more than what is stated, namely, that "there *are* deficiencies" in the amounts found by the decision for those years, without any admission that the amounts attempted to be determined by the invalid assessment are owing or that any other amounts are owing for the years in question. The most that can be said for this stipulation is that the taxpayer has admitted that it owed at least the agreed amount, which has been since paid.

Since there is nothing elsewhere in the pleadings or proof showing what the taxpayer "ought to pay" or admitting that it ought to pay any further tax on its income, we hold that, even if the injunction provided in section 274 (a) required as a condition the payment of an amount admittedly due from the taxpayer, it should be here unconditionally granted.

The District Court is instructed to enter a decree for the plaintiff enjoining any proceedings to enforce the collection of the void assessment of November 2, 1929.

Reversed.

WILBUR, Circuit Judge.

I dissent.

The opinion of the majority sustains the contention of the collector that on the appeal from the second deficiency letter the Board of Tax Appeals had jurisdiction to determine the total tax due from the taxpayer for the years 1920 and 1921. This decision is in accord with the decision of the Circuit Court of Appeals for the Fifth Circuit in Peerless Woolen Mills v. Rose, 28 F.(2d) 661, 663, cited by the Attorney General in support of his contention. That court declined to enjoin the collection of a tax assessed October 19, 1919, because it appeared that an appeal had been taken from a second deficiency assessment made December 18, 1925, and the question of the validity of the first assessment (also a deficiency assessment) was thus presented to the Board of Tax Appeals. The court stated: "The jurisdiction of the Board extends to the whole controversy, to the end that it may determine or redetermine the correct amount of the tax." This view is in accord with a decision of the Circuit Court of Appeals for the First Circuit in American Woolen Co. v. White, 56 F.(2d) 716. That court cites with approval the decision in Peerless Woolen Mills v. Rose, supra, and Bankers' Reserve Life Ins. Co. v. United States (Ct.Cl.) 44 F.(2d) 1000, 1002, and holds that on an appeal from a second deficiency notice given December 17, 1930, the Board of Tax Appeals had jurisdiction of an assessment made on the taxpayer's return in 1922.

I am inclined to agree with my associates that the Board of Tax Appeals, on the appeal of the taxpayer from the second deficiency letter, had jurisdiction to consider and determine the entire tax of the taxpayer for the year. Having agreed with the premise of the collector, I think his conclusion logically follows. The conclusion is stated in his brief as follows:

"In stipulating that the additional deficiencies for 1920 and 1921 as shown in the March, 1930, notice were correct the appellant necessarily conceded that its tax liability for such years as shown therein was correct and that the deficiencies determined in 1929 were validly assessed. If the 1929 assessments were not valid, then its tax liability and the additional deficiencies as shown in the March, 1930, notice were not correct, because as pointed out the deficiency is the excess of tax liability over the tax shown on the return increased by previously assessed deficiencies and decreased by abatements, credits and refunds. [26 U.S.C.A. § 1047, post now 26 U.S.C.A. § 271 and note]. The stipulation of deficiencies entered into before the Board of Tax Appeals necessarily was predicated upon the validity of the deficiency assessments in November, 1929. For like reasons, the order of the Board of Tax Appeals finding the additional deficiencies for 1920 and 1921 in accordance with the stipulation of the parties necessarily assumed and was based upon valid assessments of the deficiencies here involved in November, 1929.

"Thus it seems plain that the decision of the Board of Tax Appeals, which has become final, conclusively determined the appellant's tax liability for 1920 and 1921 and as a necessary incident thereto that the November, 1929, assessments of the deficiencies for 1920 and 1921, here in question, are valid. The jurisdiction of the Board extended to the whole controversy of the tax liability for 1920 and 1921 and its jurisdiction was exclusive. The Board having decided the tax liability for such years and, as a necessary incident thereto, the validity of the November, 1929, assessments of deficiencies for 1920 and 1921, that question is now res adjudicata. Tait v. Western Maryland Ry. Co., supra [(C.C.A.) 62 F.(2d) 933]. The appellant may not now question the validity of the deficiency assessments for 1920 and 1921 made in November, 1929, in this proceeding."

This view was sustained by Judge Cosgrave who tried the case in the District Court. 6 F.Supp. 327, 331. His opinion in that regard is as follows: "Defendant further contends that, in so far as the years 1920 and 1921 are concerned, the judgment of the Board of Tax Appeals, with respect to those two years, entered on July 24, 1931, is conclusion in its favor and is an adjudication of the question here litigated so far as the years mentioned are concerned. As heretofore shown, that judgment, while it affected only the assessment of March 29, 1930, yet it was made on the assumption that the assessment of

November 2, 1929, was a valid assessment. This of necessity appears because it is so recited in the schedules transmitted with a letter of March 29, 1930, the correctness of which proposed deficiency the plaintiff at first contested, but later consented to, and which was finally established by the judgment referred to. It was determined by the Board of Tax Appeals that the total amount for the year 1920 was $896,-824.30; that of this amount $682,136.82 had been previously assessed. As heretofore pointed out, this last amount of necessity included the assessment of November 2, 1929, which the plaintiff now disputes. The adjudged deficiency was $214,687.48; the same with the year 1921. In order that the judgment of the Board of Tax Appeals be correct, a valid assessment must have been found to exist for the two years. The correctness of the assessment in question was involved, and, the Board of Tax Appeals having jurisdiction of the parties and the subject-matter, and having entered judgment thereon and such judgment now being final, the question is definitely settled."

Assuming, as my associates hold, that decision of the Board of Tax Appeals on the petition of the taxpayer is conclusive as to its tax liability for 1920 and 1921, the question then arises, what did the Board of Tax Appeals decide? It is immaterial that the order was based on a stipulation, for the order of the Board in the absence of an appeal to the Circuit Court of Appeals is as final and conclusive as a judgment of a court. 26 U.S.C. A. § 1228 (now 26 U.S.C.A. § 640) section 1005 Revenue Act of 1926; see Old Colony Trust Co. v. Com'r, 279 U.S. 716, 725, 49 S.Ct. 499, 73 L.Ed. 918. "A judgment by consent of the parties is more than a mere contract in pais; having the sanction of the court, and entered as its determination of a controversy it has all the force and effect of any other judgment being conclusive as an estoppel upon the parties and their privies. * * *" 23 Cyc. 729, citing New Orleans v. Warner, 175 U.S. 120, 20 S.Ct. 44, 44 L.Ed. 96, which holds a consent judgment to be conclusive on the parties.

It was stipulated in that proceeding that the Commissioner "may assess and collect any deficiencies for the taxable years 1919, 1920, 1921." It was stipulated "that there are deficiencies in the federal income and profit taxes of petitioner for the taxable years 1919, 1920, 1921" in the above amounts for the respective years. Upon the stipulation the Board of Tax Appeals "ordered and decided that there are deficiencies for the years 1919, 1920, 1921 in the amounts of $59,256.84, $214,687.48 and $100,223.75, respectively."

The effect of this order turns on the meaning of the word "deficiencies," for the Board of Tax Appeals does not render judgments for money, but determines the amount of the income and profit taxes for which the taxpayer should be assessed. A "deficiency" does not mean the total tax due or unpaid, nor does it mean the total tax for which the taxpayer should be assessed for the year in question. If it did I should agree with my associates as to the effect of this order. The word "deficiency" is defined by statute. (26 U.S. C.A. § 1047 [now 26 U.S.C.A. § 271 and note], Revenue Act 1926.) I quote the statute with the amounts here involved in the decision of the Board of Tax Appeals inserted in brackets. " * * * the term deficiency means, (1) The amount by which the tax imposed by this chapter [that is, the correct tax, $896,824.30 for 1920 and $680,719.25 for 1921] exceeds the amount shown as the tax by the taxpayer [$488,581.54 for 1920, $313,417.58 for 1921]; but the amount shown on his return [$488,581.54 for 1920, and $313,417.58 for 1921] shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency [November 2, 1929, $193,555 for 1920, and $267,077.92 for 1921, making total $682,-132.82 for 1920, and $580,495.50 for 1921] and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect to such tax." To define deficiency in accordance with the terms of the statute, and in dollars as shown, the deficiency would be the amount fixed by the stipulation and by the deficiency notice from which the taxpayer appealed which advised the taxpayer of a deficiency of $374,168.07 for the years 1919, 1920, 1921 and an overassessment for 1918, 1924, 1925 of $52,069.41 as shown in the statement attached to the deficiency notice. This statement, so far as 1920, 1921, the years here involved and considered by the Board of Tax Appeals, is as follows:

"Tax liability, Ventura Consolidated Oil Fields.

| Years | Correct Tax Liability | Tax Previously Assessed | Over Assessment | Deficiency |
|---|---|---|---|---|
| 1920 | $896,824.30 | $682,136.82 | | $214,687.48 |
| 1921 | 680,719.25 | 580,495.50 | | 100,223.75" |

It is clear then that the Commissioner intended by his deficiency notice to inform the taxpayer that his total tax for 1920 would be $896,824.30 and for 1921 would be $680,719.25, and that all but $214,687.48 for 1920 and $100,223.75 for 1921 had already been assessed. Nor was the taxpayer ignorant of this assessment of 1929. The appellant alleged his knowledge of the facts in his complaint herein, as follows:

"That on the 2nd day of November, 1929, the Commissioner of Internal Revenue made certain entries upon the record of assessments in his office, which entries had the appearance of and were listed in said office of said Commissioner as, and purported to be, assessments against plaintiff, as follows:

"1. An assessment in respect to an alleged deficiency of income taxes and excess profits taxes imposed by Titles II and III of the Revenue Act of 1918 for the taxable year 1920, in the sum of $193,555.28, together with interest thereon in the sum of $42,804.88, being a total of $236,360.16.

"2. An assessment in respect to an alleged deficiency of income taxes and excess profits taxes imposed by Titles II and III of the Revenue Act of 1921 for the taxable year 1921 in the sum of $267,077.92, together with interest thereon in the sum of $116,301.46, being a total of $383,379.38.

"3. An assessment in respect to an alleged deficiency of income taxes imposed by Title II of the Revenue Act of 1921 for the taxable year 1922 in the sum of $19,065.73, together with interest thereon in the sum of $7,158.38, being a total of $26,224.11.

"4. An assessment in respect to an alleged deficiency of income taxes imposed by Title II of the Revenue Act of 1921 for the taxable year 1923 in the sum of $16,298.13, together with interest thereon the sum of $5,141.37, being a total of $21,439.50. * * *

"VII. That on the 2nd day of November, 1929, the said Commissioner of Internal Revenue included the said amounts of principal and interest referred to in Paragraph V . hereof as assessments against plaintiff in a list of assessments made under and pursuant to the Revenue Act of 1926, and on said last mentioned day duly certified such list and *thereupon transmitted the same, so certified, to defendant.* That defendant received the same and became and was charged therewith and with the collection thereof."

The appellant alleges that these assessments were made by the Commissioner "under the mistaken belief that there had been filed with him a notice in writing by or in behalf of plaintiff waiving the restrictions provided by subdivision (a) of Section 274, * * *" which section provides for a 60-day deficiency notice. It is clear then that the Commissioner claimed the assessments of November 2, 1929, to be valid and that the plaintiff was fully advised of that claim, both by previous notice and by the deficiency notice from which. it appealed to the Board of Tax Appeals. In the proceeding before the Board of Tax Appeals the appellant did not challenge the assessment of November 2, 1929, as such, either because premature or otherwise, but did raise many points going to the amount of its entire net income for the years involved. Its petition before the Board of Tax Appeals alleges: *"The taxes in controversy* are income and profits taxes for the calendar years 1918 to 1924, inclusive, and the period January 1, 1925 to October 15, 1925, and *are in the amount of $374,168.07."* (Italics ours.) There is no suggestion that the changes that the appellant claimed in its petition to the Board of Tax Appeals should be made in its net income would be so great as to affect the amount covered by the assessment of November 2, 1929. In fact the petitioner does not allege what deductions it claims, nor the amount of the tax which would result from the fixing of its net income in the manner requested, nor can the amount be determined from the record. As the appellant states in its brief: "It is impossible in this proceeding to consider the merits of the tax attempted to be imposed, nor can we here attempt to show what plaintiff's tax liability for the years 1920-1923 is or ought to be." The stipulation before the Board of Tax Appeals fixed the deficiency at the amount claimed by the Commissioner which was the amount alleged by the taxpayer to be in controversy, that is, $374,168.07 for the three years. The order of the Board of Tax Appeals based thereon fixed the deficiency at $214,687.48 for 1920 and $100,223.75 for 1921. In other words, the stipulation and the order both assumed the liability of the taxpayer for the assessment of 1929 now in dispute. There could be no deficiency as defined in the statute until the tax liability exceeded the assessment

of 1929. The stipulation to the amount of the "deficiency" was a stipulation that the assessment of 1929 was a part of the appellant's total tax. If, however, we assume that the premature assessment of November 2, 1929, was not an "assessment" within the meaning of the law defining "deficiency," the conclusion is nevertheless inescapable that when the appellant stipulated with the Commissioner as to the deficiency in the tax, it understood that the Commissioner claimed the amount of the November 2, 1929, assessment as an amount previously assessed as a deficiency assessment. Further statement of the facts will make it plain that this was the actual intent of the parties to the stipulation before the Board of Tax Appeals. The parties stipulated in the lower court as follows as to the facts:

"On the 2nd day of November, 1929, the Commissioner of Internal Revenue made the following as additional assessments against the plaintiff herein:

| Year | | Amount |
|------|------|------|
| 1920 | Principal | $193,555.28 |
| | Interest | 42,804.88 |
| | Total | $236,360.16 |
| 1921 | Principal | $267,077.92 |
| | Interest | 116,301.46 |
| | Total | $383,379.38 |
| 1922 | Principal | $ 19,065.73 |
| | Interest | 7,158.38 |
| | Total | $ 26,224.11 |
| 1923 | Principal | $ 16,298.13 |
| | Interest | 5,141.37 |
| | Total | $ 21,439.50" |

Hence, both parties evidently considered the assessment of November 2, 1929, to be an assessment when stipulating before the Board of Tax Appeals as to the amount of the deficiency for the years 1920 and 1921. Hence, the stipulation and the order or decree based thereon assumed the obligation of the taxpayer to pay the amounts previously assessed, although the "assessment" was premature.

The word "deficiency," as used in the decree and as defined in the statute, as I have shown, means the amount over and above previous assessments; consequently, as I view it, the Board of Tax Appeals by

necessary inference affirmed the validity of the previous assessment of November 2, 1929. Furthermore, if the order did not affirmatively approve the assessment of 1929, the decision of the Board of Tax Appeals is equally effective as res judicata on the validity of that assessment because the taxpayer had an opportunity to challenge the assessment of November 2, 1929, before the Board of Tax Appeals and failed to do so. In my judgment there is no merit in the appellant's claims either in law or equity as to the assessments of 1920, 1921.

The assessments of 1922, 1923, were not involved in the decision of the appeal to the Board of Tax Appeals amounting to $19,065.73, with $7,158.38 interest, a total of $26,224.11 for 1922, and for the year 1926, $16,298.13, with interest amounting to $5,141.37, a total of $21,439.-50, because no second deficiency had been asserted as to this tax. As to these taxes the Board dismissed the petition of the taxpayer on the stipulation for lack of jurisdiction. Hence, the amount of these deficiencies fixed in November 2, 1929 involves a different question.

As to these taxes of 1922 and 1923, and as to the taxes for 1920 and 1921 also, in my judgment the bill of complaint fails to state a cause of action because no payment or tender is made of the amount of the tax justly due.

I agree with my associates that the assessment of 1929 was premature for the reasons stated in the majority opinion. If section 274 (a) expressly authorized an injunction to be issued by the courts in all cases where there has been a premature assessment, I would agree with my associates as to the taxes for 1922 and 1923. The statute, however, does not take that form. It does not purport to grant a right to an injunction in such case; it merely raises the prohibition against such an injunction contained in section 3224 of the Revised Statutes (26 U.S.C.A. § 1543), which prohibits any injunction to restrain the collection of a tax. The intent of Congress must be determined from the language of the statute, which is as follows: "Notwithstanding the provisions of section 3224 of the Revised Statutes [section 1543 of this title], the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court."

It is a fundamental principle of equity jurisprudence that he who seeks equity must do equity, and that in an action to enjoin the collection of a tax alleged to be invalid the plaintiff must do equity by paying or offering to pay the amount of the tax justly due. This rule is thoroughly established and is of long standing and has recently been applied by the Supreme Court in the case of Rowley v. Chicago & N. W. Ry. Co., 293 U.S. 102, 55 S.Ct. 55, 79 L.Ed. 222, decided November 5, 1934. I believe that this rule is applicable in a court of equity upon an application of a taxpayer to enjoin the collection of a tax just as it was before the enactment of section 3224 of the Revised Statutes (26 U.S. C.A. § 154 (now 26 U.S.C.A. § 1543), and that it remains applicable to such actions notwithstanding the lifting of the prohibition of an action to enjoin the collection of a tax imposed by section 3224 of the Revised Statutes. It has been applied uniformly in the federal courts in actions to enjoin state officers from the collection of state taxes where such taxes were claimed to be absolutely void. In such cases, although the tax is void, the plaintiff, in order to secure the injunction from a court of equity, must tender the amount equitably due.

My associates seem to be of opinion that if the taxpayer challenges the validity of the assessment and makes no concession as to the amount of tax justly due, he may be excused from tendering the tax which is equitably due. I think this is too narrow a view of the duty of plaintiff in an action to enjoin the collection of tax. For instance, in the case at bar, the appellant does not expressly concede that any tax is due, neither does it challenge the finding of the Commissioner as to its net income. The failure to challenge the correctness of the finding of the Commissioner is in effect an admission that the net income of the taxpayer is that found by the Commissioner. The taxpayer does not base his action to enjoin the tax upon the theory that the tax was erroneous or too great, but solely upon the proposition that it was premature, and therefore an invalid and mistaken exercise of power on the part of the Commissioner. It does not allege that it desires to appeal from the assessment of November, 1929, or that its claimed deductions from its gross income are different from those fixed by the Commissioner. The taxpayer in its return stated the amount of its gross income; it agreed to the assessment which was in fact made by the Commissioner, although, as my associates have pointed out, this agreement was not binding upon the taxpayer because it was not accepted by the Commissioner. Subsequently, in its appeal from the second deficiency assessment it was assumed by the Commissioner and not denied in any way by the taxpayer, that the amount of tax already erroneously assessed was binding upon the taxpayer. The last deficiency assessment which was finally adjusted by stipulation of the parties contemplated the payment of the erroneous assessment. Under these circumstances, in the absence of any contention on the part of the taxpayer that the premature assessment made by the Commissioner was excessive, I think it was incumbent upon the taxpayer to pay or tender the total amount fixed by the Commissioner.

Assuming that the taxpayer is not bound by the judgment of the Board of Tax Appeals or by its own agreement to pay the tax upon that portion of its net income which was covered by the premature assessment, nevertheless before it can invoke the power of a court of equity to enjoin the collection of that portion of the tax covered by the premature assessment, it should show that such tax was not equitably due, or should do equity by paying the tax.

It is my view that Congress had no intention of repealing or modifying the well-established principles of equity jurisprudence applicable to the granting of injunctions to restrain the collection of a tax when it removed the restriction which would otherwise prevent such an application for an injunction being made at all.

My associates state that the usual requirement of a court of equity of payment as a condition precedent to an injunction would defeat the purpose of Congress in setting up the Board of Tax Appeals and in requiring the Commissioner to refrain from making a deficiency assessment until the expiration of 60 days after notice to the taxpayer, and thereafter if an appeal is taken to the Board, until a decision thereof. We agree that in default of notice the assessment is premature and void because no opportunity has been given the taxpayer to contest the assessment before it was made. Congress, anticipating such a situation, removed the statutory prohibition against an application to a court for an injunction. It is said that if the tax-

payer is compelled to pay the amount he concedes to be due as a condition of granting an injunction which will give him an opportunity to contest the position he disputes and desires to litigate before the Board of Tax Appeals, it will in some way frustrate the purpose of Congress in permitting the equitable action to be brought. In considering that question it should be noted that the tax is due at the time of the original return, that the taxpayer in assessing his own tax has been too liberal with himself, and that the Commissioner has found that this liberality in the case at bar amounted to half a million dollars. If this tax, or any part of it, is justly due, what reason is there for abrogating the general equitable rule requiring payment of the amount justly due as a condition of obtaining an injunction restraining the collection of the balance claimed to be excessive and unjust? Using round numbers, the taxpayer says in its brief that its consent to the making of the additional $500,000 assessment (the first deficiency) was by way of compromise, and that the amount of $300,000 was all that was then justly due, and that this amount was paid by paying the second deficiency assessment. Thus, in effect, the taxpayer now asserts in his brief that which it did not allege in his complaint, that the first assessment was excessive as to the amount of $200,000, and that the sum of $300,000 was and is justly and equitably due and has been paid.

I readily concede that if the taxpayer had alleged these facts in his complaint he would have stated a prima facie case for an injunction subject to the finding of the court as to what was clearly and justly due and the requirement of a payment thereof as a condition to an injunction pending further proceedings by the Commissioner to assess a valid tax. The amount required by the court as a condition precedent to the injunction is to be subsequently increased or decreased by the Commissioner according to his judgment under the applicable rules and law.

But as I understand my associates, they hold that the question as to whether or not a portion or all of the first deficiency tax was justly due is wholly immaterial to the right to an injunction particularly when the taxpayer seeking the injunction stands mute as to the justice of all or a portion of the tax and merely alleges that the assessment was premature and therefore is illegal and void because beyond the power of the Commissioner.

The question is: Can the taxpayer enjoin the collection of the whole assessment ($500,000) without paying any part of it, and without alleging facts showing the tax or any part of it to be unjust, although Congress has fixed the percentage of income to be paid as a tax and has fixed his obligation to pay the tax as of the date of the return, and has fixed the net income of the taxpayer as the basis of the tax? I use the round numbers, $500,000 and $300,000, used by the taxpayer in its brief, by way of illustration to show that it would not be oppressive or inequitable to require a taxpayer to pay the portion of the tax which he concedes to be just ($300,000) as a condition precedent to an injunction, the avowed purpose of which is to give the taxpayer an opportunity to contest the disputed portion amounting to $200,000.

My associates refer in the main opinion to the fixing of the amount which should be paid by the taxpayer as a condition precedent to the issuance of an injunction as though it were an assumption on the part of the court of the power to assess the tax. This I believe is an erroneous view of the duty of the court. It is uniformly held that the court has no power to assess or fix the tax and an order of the trial court conflicting with that view has recently been reversed by the Supreme Court in Rowley v. Chicago & N. W. Ry. Co., 293 U.S. 102, 55 S.Ct. 55, 59, 79 L.Ed. 222. There the court said: "The trial court was not called upon, and it was no part of the judicial function, to determine the base or amount of the tax that in its view might legally be exacted as a result of the assessment in question. State R. R. Tax Cases, 92 U.S. 575, 614, 615, 23 L.Ed. 663; Thompson v. Allen County, 115 U.S. 550, 6 S.Ct. 140, 29 L.Ed. 472. Cf. Central Kentucky Nat. Gas Co. v. Railroad Commission, 290 U.S. 264, 271, et seq., 54 S.Ct. 154, 78 L.Ed. 307. If that assessment were illegal, the State, notwithstanding any adjudication against its validity as repugnant to the Federal Constitution, should have been left free again to value the property."

The rule is equally well established that the taxpayer must pay the amount of tax justly due as a condition of obtaining an injunction, and that the trial court may in its decree enjoining the collection of the tax, fix a higher amount to be paid as condition for the granting of the injunction if

in its judgment a greater amount is equitably due. The court does not fix the tax or purport to do so. It merely fixes the terms upon which it will enjoin the invalid tax leaving the state or the assessing officers free to determine the amount of the tax according to the controlling statutes.

My associates state that the fact that the government is barred from the collection of this tax by statute of limitation has no bearing upon the question involved. In my judgment it emphasizes the wisdom of the equitable rule and makes its application more necessary. A chancellor does not shut his eyes to the actualities.